UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| MAYNARD SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-051 |
| | ) | CR417-011 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

The Court sentenced Maynard Sanders to 78-months of incarceration and three years of supervised release on being found guilty of the possession of a firearm by a prohibited person (18 U.S.C. § 922(g)(1)). Docs. 53 (jury verdict) and 64 (sentence).[1] He now seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. Doc. 90. His motion alleges a lack of reasonable suspicion for his initial questioning and ineffective assistance of counsel, specifically that counsel failed to challenge the alleged lack of reasonable suspicion at trial or through the suppression of the resulting evidence. The Government moves to dismiss

---

[1] The Court is citing to the criminal docket in CR417-011 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

the petition. Doc. 92. Sanders has not opposed the Government's motion. *See* S.D. Ga. L. R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion."). For the following reasons, it is recommended that the Government's unopposed motion to dismiss, doc. 92, be **GRANTED** and Sanders' motion to vacate, doc. 90, be **DISMISSED**.

## BACKGROUND

On January 18, 2017, Savannah State University received a complaint from two students that a man was selling counterfeit credit cards in the campus student-union building. Doc. 92 at 2. On January 24, 2017, one of the students reported that the individual had returned. *Id*. Multiple Savannah State University Police officers responded to the student-union, where Detective Corey Cotton approached Sanders. *Id*. and Doc. 77 at 31. At that time, Detective Cotton did not observe Sanders, who was standing with another man, committing any crimes. *Id*. at 49, 52.

Sanders initially claimed to be a "Mayfield Seabrooks." *Id*. at 31–32. When he later identified himself Maynard Sanders, Detective Cotton walked him to a private area in the student-union and ran his

information through the National Crime Information Center database, which returned an outstanding warrant from the U.S. Marshal Service. *Id.* at 32; Doc. 92 at 2–3. Sanders was then taken into custody and searched incident to arrest, producing two cell phones and a credit card. Doc. 77 at 33–34.

While awaiting another officer to transport Sanders to police headquarters, Detective Cotton was approached by Tyanna Gibson, who asked for the keys to her vehicle. *Id.* at 34. After locating the vehicle, Gibson consented to Detective Cotton conducting a search. *Id.* at 35. During the search, a bag was found in plain view. *Id.* at 35–36. The bag carried a label with Sanders' name and contained Greyhound travel documents and Western Union receipts bearing defendant's name. *Id.* at 36–37, 43–47. Also, in the bag were rings, two additional cell phones, and a loaded firearm. *Id.* at 47, 50.

After being Mirandized, Sanders initially declined to speak with officers. *Id.* at 37. He later willingly spoke with officers and admitted ownership of the firearm; providing information of the weapon, including that it was loaded with ammunition in the chamber. *Id.* at 37–41, 65. A subsequent investigation produced a photograph, taken from a cell phone

in Sanders' possession, that appeared to show him in possession of the firearm. *Id.* at 59–60, 68–72. It was also determined that he had two prior felony convictions.[2] *Id.* at 72–76.

On February 8, 2017, Sanders was indicted on one count of possession of a firearm by a prohibited person. Doc. 1. Over the course of the case, he was represented by multiple court appointed attorneys, including at trial by Richard Darden. Prior to trial, Sanders sent a *pro se* letter to the Court, requesting that Darden recuse himself from the case. Doc. 40. In support of his request, Sanders claimed that Darden "violated the 'lawyers creed' by not suppressing [sic] the appropriate motions [Sanders] requested in his defense" and encouraged him to "surrender" or "pay the consequences." *Id.* at 1–2. Defense counsel did file multiple motions during the case, but did not file a motion to suppress evidence. *See* docs. 13, 17, 18, and 19. Darden did not request to be released from the case, but raised Sanders' concerns with the Court at the beginning of trial and, in doing so, indicated his belief that they were without merit. Doc. 77 at 5.

---

[2] Sanders was previously convicted in the Southern District of Georgia for possession of a firearm by a prohibited person (18 U.S.C. § 922) in 2008 and in Superior Court of Chatham County, Georgia, for financial transaction card fraud (O.C.G.A. § 16-9-33) in 2006. Doc. 77 at 72–76. Both were felony convictions. *Id.* at 73 and 76.

Sanders was convicted of the charged offense following a jury trial and sentenced to 78-months incarceration and three years of supervised release. Doc. 53 and 65. His motion for a new trial, doc. 58, was denied by the Court, doc. 62. On appeal, Sanders challenged the length of his sentence and the District Court's upward departure from a criminal history category of IV to VI under Federal Sentencing Guideline § 4A1.3.[3] Doc. 65. The Eleventh Circuit affirmed the sentence. Doc. 84. He subsequently filed a motion to vacate pursuant to 28 U.S.C. § 2255. Doc. 90. The Government filed a motion to dismiss Sanders' § 2255 motion, doc. 92, to which Sanders did not respond.[4]

## ANALYSIS

The Court construes the three grounds raised in Sanders's motion to vacate as two allegations: (1) a violation of the Fourth Amendment prohibition against unreasonable search and seizure and (2) ineffective assistance of trial counsel. As Sanders did not raise these claims on direct appeal, they are likely procedurally defaulted in this collateral

---

[3] The Appellate Court did not consider the arguments raised in Sanders' habeas petition.

[4] Pursuant to local rule, Sanders was to file a response to the motion within 14 days. L.R. 7.5.

proceeding. *Mills v. U.S.*, 36 F.3d 1052, 1055 (11th Cir. 1994) ("an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding"); *but see United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000) ("Ineffective assistance of counsel may satisfy the cause exception to a procedural bar." (citing *Greene v. United States,* 880 F.2d 1299, 1305(11th Cir. 1989)).  However, the Court need not undertake an analysis as to whether the claims are barred because, even if they were not defaulted, they are meritless.

I.  Reasonableness of the Search

Sanders' challenge to the appropriateness of his initial questioning is based on a flawed understanding of the Fourth Amendments and is, ultimately, defeated by his own allegations. Though reasonable suspicion likely existed based on the student complaint to police, doc. 92 at 2, it was not necessary. Law enforcement officers do not violate, or even implicate, the Fourth Amendment by merely approaching an individual in a public area and asking questions. *See Muhler v. Mena,* 544 U.S. 93, 101 (2005) ("We have 'held repeatedly that mere police questioning does not constitute a seizure,' and '[e]ven when officers have

no basis for suspecting a particular individual, they may generally ask question of that individual; ask to examine the individual's identification; and request consent to search his or her' belongings." (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 434-35 (1991)); *United States v. Drayton*, 536 U.S. 194, 200–201 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.").

 Sanders concedes in his motion that Detective Cotton approached him in the Savannah State Student Union and asked him about his identity. Doc. 90 at 13. He does not allege that he was detained at that time or that he was compelled to answer Detective Cotton's questions. To the contrary, Sanders responded to the presented questions by initially providing a false name. Doc. 77 at 31–32. He also willingly relocated with Detective Cotton to a more private area while his name was run through the National Crime Information Center database. *Id.* at 32. It was not until Detective Cotton learned of the existence of a valid arrest warrant that Sanders was detained and searched. *Id.* at 33. As Sanders was approached in a public area and was not detained, reasonable

suspicion was not required for the questioning. Thus, there was no Fourth Amendment violation to form the foundation of a collateral appeal.

## II. Counsel's Performance

Sanders faults trial counsel for failing to challenge the lawfulness of his initial contact with Detective Cotton and for not seeking suppression of the resultant evidence. Doc. 90 at 13–15. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-prong test for determining when counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id*. Sanders fails to satisfy either prong.

His motion to vacate is premised on the incorrect belief that if his counsel had raised the question of whether Detective Cotton was justified in approaching and questioning him in the student union before the Court, the Government would have been unable provide a valid reason.

Had counsel done so, all evidence flowing from the stop, including the firearm, would have been deemed inadmissible and the case would have resolved in his favor. Doc. 90 at 12. This is simply not the case.

Sanders is wrong in suggesting that "any other functioning counsel would have challenge [sic] [Detective] Cotton's objective reasons" for the questioning. *Id.* at 14. Competent counsel would not file a meritless motion, *see supra* p. 6–8—indeed, competent counsel would recognize his ethical obligation not to file such a motion. *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1337 (11th Cir. 2002). As discussed above, Detective Cotton's initial interaction with Sanders did not implicate the Fourth Amendment and, therefore, did not require reasonable suspicion. *See Muhler*, 544 U.S. at 101 (discussed above). Thus, the ethical standards of the profession would preclude petitioner's attorney from advancing this unwarranted claim or defense. Rule 3.1, Georgia Rules of Pro. Conduct. Furthermore, even if such a motion had been filed, it would have been unsuccessful and, therefore, would not have altered the course of the proceedings. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different."). Counsel's refusal to advance such a transparently meritless arguments or to file frivolous motions could not have prejudiced Sanders and is not evidence of ineffective assistance. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (there is no "constitutional right to compel appointed counsel to press [even] nonfrivolous points"); *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2015) ("If a search was constitutional, then counsel is not obligated to move to suppress the evidence . . . and a defendant is not prejudiced by counsel's failure to do so."). As Sanders chose not to respond to the Government's motion to dismiss and his motion to vacate fails to demonstrate that he is entitled to habeas relief, the motion to dismiss should be **GRANTED**.

## CONCLUSION

Accordingly, the Government's motion to dismiss should be **GRANTED** and Maynard Sanders' § 2255 motion should be **DENIED**. Accordingly, no certificate of appealability should issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant."). Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 10th day of February, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA